**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**Case: 2:26−cv−14294**
**Assigned To : Goldsmith, Mark A.**
**Referral Judge: Altman, Kimberly G.**
**Assign. Date : 11/9/2026**
**Description: CMP DORDIK V. THE REGENTS OF THE UNIVERSITY OF MICHIGAN ET AL (NA)**

STANISLAV DORDIK,
Plaintiff,

v.

THE REGENTS OF THE UNIVERSITY OF MICHIGAN; and RICHARD S. HOLCOMB, JR., in his official capacity as Vice President for Human Resources only,
Defendants.

Case No. ____________________
District Judge ____________________
Magistrate Judge ____________________

**COMPLAINT AND JURY DEMAND**

**Nature of the action**

1. Plaintiff Stanislav Dordik brings this employment action for denial of a reasonable accommodation for his own disability and retaliation for protected requests concerning disability and family-care leave. His employment at the University of Michigan ended on July 21, 2026.

2. Plaintiff seeks relief under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the family-care provisions of the Family and Medical Leave Act, 29 U.S.C. §§ 2612, 2615 and 2617; and Titles I and V of the Americans with Disabilities Act, 42 U.S.C. §§ 12112 and 12203. The ADA counts seek prospective

injunctive relief against the responsible University official, not damages from the University or any individual.

**Parties, jurisdiction and venue**

3. Plaintiff worked as a Multimedia Designer, with the departmental working title Motion Graphic Designer, in the Office of Digital Education at the Stephen M. Ross School of Business in Ann Arbor, Michigan. He began working for the University on a temporary basis in September 2019 and received a regular appointment effective May 4, 2020. His work included motion graphics, animation, video editing and educational multimedia.

4. Defendant The Regents of the University of Michigan is the governing body of the University and employed Plaintiff through Ross. Ross is a University unit and is not named as a separate legal entity.

5. The University receives federal financial assistance, including federal research awards and federal student financial assistance. Its published fiscal-year 2025 financial report describes federal funding. Section 504 applies to its operations under 29 U.S.C. § 794(b). Plaintiff invokes the waiver of immunity in 42 U.S.C. § 2000d-7.

6. Defendant Richard S. Holcomb, Jr. is the University Vice President for Human Resources. He is sued solely in his official capacity for prospective relief under the ADA. The University identifies him as directing Staff HR Services, HR

Records and Information Services, and Talent Acquisition. University policy SPG 201.12 requires approval by the appropriate Human Resources Office before discharge; SPG 201.46 assigns central personnel-record responsibilities to HR offices under his leadership. On information and belief, he can direct those central HR functions in implementing reinstatement and correction of the challenged records. Plaintiff does not allege that Holcomb personally made the historical decisions described below.

7. This Court has jurisdiction under 28 U.S.C. § 1331 and the statutes identified above. The family-care FMLA claim is brought against the Regents. The ADA claims against Holcomb seek reinstatement and relief from continuing exclusion and use of challenged employment records under Ex parte Young, 209 U.S. 123 (1908).

8. Venue lies in this District under 28 U.S.C. § 1391 and the venue provisions applicable to the ADA because Plaintiff worked in Ann Arbor and the challenged employment practices occurred here.

**Administrative history**

9. On July 31, 2026, Plaintiff emailed EEOC investigator Zanthaia McCullough a completed supplemental ADA questionnaire describing his written December 2025 accommodation request. That email and questionnaire appear in the EEOC disclosure packet. Plaintiff digitally signed EEOC Charge No. 471-

2026-06948 on August 11, 2026. The charge identified disability and retaliation, described Plaintiff's own disability and association with a person with a disability, and named the University of Michigan Ross School of Business as the employer.

10. The charge gives July 26, 2026 as the termination date. The contemporaneous termination letter and University personnel action record identify July 21, 2026. Plaintiff pleads July 21, 2026 and discloses that discrepancy.

11. EEOC issued its Determination and Notice of Rights on August 20, 2026. Plaintiff received the notice on August 20, 2026, and brings this action within 90 days of receipt. The notice states that EEOC made no determination whether further investigation would establish a violation. A copy is provided with this complaint.

12. The ADA accommodation and retaliation allegations concern the same disability, employment relationship, discipline and termination identified in the charge and the accommodation request described in the supplemental questionnaire. Plaintiff alleges they fall within the scope of the charge and the investigation reasonably expected to grow from it. The Section 504 and FMLA counts rest on their own statutory enforcement provisions.

**Background: the proposal to the Associate Dean**

13. In 2024 Plaintiff spoke with Associate Dean S. Sriram about a proposal for a series of educational documentary films at Ross. Plaintiff was personally

acquainted with Associate Dean S. Sriram outside the University, and S. Sriram asked Plaintiff to send a brief description of the idea by email. Plaintiff had previously discussed the proposal with his immediate supervisor, Toon Mertens, Media Services Manager in the Office of Digital Education, and with Gregory Barker, Managing Director of the Office of Digital Education.

14. Mertens later told Plaintiff that Barker was displeased that the proposal had reached Associate Dean S. Sriram. In a May 19, 2026 meeting Barker told Plaintiff that he had previously told Plaintiff not to approach Associate Dean S. Sriram with the project proposal and not to do so again.

15. Following Plaintiff's 2024 conversation with Associate Dean S. Sriram, Mertens began to subject Plaintiff to increased criticism and scrutiny, and Plaintiff's relationship with his supervisors deteriorated. The counts below rest on Plaintiff's disability-related and family-care requests; Plaintiff does not allege that the proposal was itself protected activity under the statutes sued upon.

**Disability and accommodation request**

16. During 2025 Plaintiff experienced anxiety, panic symptoms and difficulty concentrating that, when active, substantially limited his concentration and thinking. Those limitations affected sustained design and editing work in the on-site work environment. Plaintiff alleges that he could perform his essential duties with a reasonable adjustment of work location or schedule.

17. A treating physician signed a Work Connections medical form on October 24, 2025 listing anxiety and PTSD, recommending work from home and describing difficulty with concentration. The form states that Plaintiff is able to work and that working from home would help. Around that time, Plaintiff sought work flexibility for his own condition, separately from his earlier requests concerning family circumstances and caregiving for his mother.

18. In December 2025, Plaintiff emailed Work Connections requesting a hybrid schedule to continue working with his medical limitations. Work Connections requested additional documentation from his treating physician, which he provided.

19. During that review, Work Connections asked whether Plaintiff held a second job and told him the question came from his department. After Plaintiff supplied the physician's documentation, Work Connections specialist Hannah Johnson told him his department wanted an independent medical evaluation. Plaintiff asked who requested it and why documentation from his U-M Health provider was insufficient. Work Connections stopped asking for an independent evaluation and gave Plaintiff no explanation.

20. At the March 5, 2026 meeting with manager Toon Mertens and Ross HR representative Teresa Purnama, HR referred to a prior request to work

remotely that the unit could not support. The discussion concerned caregiving and schedule options through Work Connections.

21. Plaintiff performed extensive computer-based design and postproduction work and collaborated with faculty and project leads largely through online project-management software. He previously worked on a hybrid schedule. A University position description lists hybrid work with on-site expectations in Ann Arbor, and lists creating 3D elements and virtual sets, collaborating with design and production staff, and participating in pre-production meetings. Plaintiff sought an arrangement permitting remote computer-based work while attending necessary on-site functions under an appropriately arranged schedule. Another employee in the same Multimedia Designer position worked fully remotely for years. Another employee, a Learning Designer, worked fully remotely from Utah for years; that role included recurring interaction with faculty and work on digital course materials. Much of Plaintiff's day-to-day postproduction work consisted of receiving assignments and feedback electronically and completing edits on a computer. To Plaintiff's knowledge, these arrangements illustrate that the department could support remote production and collaboration.

22. The University did not provide the requested hybrid arrangement or an effective alternative work adjustment in response to his December disability-related request. Plaintiff alleges that the loss of work-location flexibility

contributed to his panic symptoms and his need for medical leave, which Work Connections supported beginning December 10, 2025.

23. At the March 5 meeting HR stated that ordinary hybrid work was generally within management discretion and that placement in a written MOE or PIP made an employee ineligible. Mertens had told Plaintiff the same on September 15, 2025, citing section 5 of the Workflex policy. Plaintiff alleges that the University continued to apply this ordinary eligibility rule to his work-location circumstances without providing an effective individualized response to the separate request concerning his own disability.

24. Work Connections supported Plaintiff's medical leave from December 10, 2025 through February 26, 2026. He returned on February 27. Work Connections had confirmed the planned return date by text on February 10. Plaintiff challenges the handling of his disability-related request and subsequent discipline.

**Family care requests and employer knowledge**

25. Plaintiff's mother had a serious health condition requiring ongoing treatment and needed his assistance with transportation, care and support. Plaintiff communicated those responsibilities to management. After his return in February 2026, Plaintiff continued to care for his mother and needed flexibility to respond to her requests for assistance at unpredictable times each day.

26. On May 7, 2025, after Plaintiff entered his July vacation dates in the team calendar, Mertens asked on Slack whether there was a possibility that Plaintiff would be requesting FMLA in the near future.

27. On August 29, 2025, Plaintiff told Mertens that he could not work after 5 p.m. because he was his mother's caregiver, and wrote that he would apply for FMLA from the end of November. Mertens replied that he knew Plaintiff was his mother's caregiver, that they had agreed on limited studio time from March through June for family responsibilities, and that FMLA, unpaid leave and preventative sick time were available with documentation. Plaintiff provided caregiving information; Mertens said it was sufficient on an informal basis, asked for similar caregiving documentation for July and August, and again referred to FMLA.

28. On September 3, 2025, Plaintiff told Mertens in writing that he would report Mertens's request for doctor sensitive and personal information to HR and the University complaint system; Mertens directed him to send his complaints to Barker. Plaintiff objected to supplying private family information directly to his supervisor and sought HR guidance.

29. On September 15, 2025, Mertens told Plaintiff that under the Workflex policy an employee with a performance memo issued by Mertens was ineligible for remote or hybrid work, that he was expected to work on site full time, and that FMLA was available for caregiving.

30. Plaintiff worked full time for the University for years, had been employed for more than twelve months and, on information and belief, had worked at least 1,250 hours in the twelve months preceding his spring 2026 family-care request. Work Connections approved family-care FMLA leave, and on July 14, 2026 told Plaintiff that eight days per month were currently approved. The University employed at least 50 employees within 75 miles of his worksite and was a covered public employer.

31. On March 13, 2026 Plaintiff told Mertens that he had started a request with Work Connections concerning caregiving and that without hybrid flexibility he would need family leave. Mertens required attendance at the assigned desk and directed him to Work Connections. Plaintiff alleges that he was communicating a need to exercise family-care leave rights.

32. A healthcare provider completed a family-care FMLA certification dated March 31, 2026 describing Plaintiff's mother's serious health condition and anticipated intermittent care needs. Plaintiff pursued the family-care request through Work Connections.

33. On March 16 Work Connections asked Plaintiff to call. On March 27 it followed up about FMLA forms, and Plaintiff reported arranging physician appointments for forms concerning both himself and his mother.

34. On May 12, 2026, Work Connections texted Plaintiff to ask how he wanted to apply his FMLA so that it could send the updates to his department. On May 13, Plaintiff discussed with Work Connections specialist Johnson using FMLA time for his mother's care. The complete email exchange and designation records are in University custody.

35. On May 18, 2026 Plaintiff texted Work Connections that his mother would begin a long treatment the next week and asked to take FMLA as soon as possible and whether that time could be paid.

36. On July 14, 2026 Work Connections texted that eight days per month of family-care FMLA were currently approved, that July 6 through July 17 involved ten days, and that an updated certification was needed for time exceeding the approved amount. It requested that certification by July 24. The requested days concerned Plaintiff's mother's care. Plaintiff replied the same day, proposing to apply the eight approved days and vacation for the additional two. The final handling of that proposal and the complete leave ledger remain in University custody.

**Timesheet condition on a later leave request**

37. After Plaintiff returned in February 2026, Mertens repeatedly told him that the July 2025 timesheet could not be found and that he had to sign a replacement. When Plaintiff requested about a week away in the spring for his

mother's care and personal matters, he told Mertens why he needed the time. Mertens told him that the request could not be approved until he re-signed the July 2025 timesheet.

38. HR later acknowledged a mistake in the missing-timesheet explanation, and the requested time away was approved.

**Discipline, termination and continuing consequences**

39. An MOE dated May 30, 2025 addressed lateness and attention during studio assignments. The word multiple in one lateness allegation was struck out.

40. On September 15, 2025, Mertens told Plaintiff that he was ineligible for remote or hybrid work under the Workflex policy because of the MOE and was expected to work on site full time. The on-site requirement continued after his October 24, 2025 medical form and his December 2025 request. The later disability-related request required separate individualized consideration.

41. Management discussed a PIP with Plaintiff on March 5, 2026, six calendar days after his return from medical leave. The plan began March 10, eleven calendar days after his return. Mertens stated at the March meeting that the plan had been devised during the previous year. Plaintiff alleges that the prompt implementation and subsequent use of the plan warrant examination together with the accommodation and leave record.

42. The initial PIP copy retained in the EEOC packet cited an August 29, 2025 exchange as an example of alleged refusal of training and upskilling. That conversation also included caregiving and future leave. Plaintiff disputes the characterization of his training responses. The PIP copy provided in his University personnel file omits the illustrative incidents appearing in the other copy. Plaintiff seeks the complete version and distribution history.

43. At the March 13 meeting Mertens described himself as officially unaware of Plaintiff's caregiving circumstances while acknowledging that Plaintiff had mentioned them. He directed Plaintiff to Work Connections and stated that Plaintiff could take leave. The earlier Slack exchanges show that he already knew of the caregiving situation; Plaintiff distinguishes that knowledge from formal approval of particular restrictions or absences.

44. The University issued interim PIP reports dated April 14 and May 12 and a final report dated June 18, 2026. The May report attributed delays on TO712 and TO751 to Plaintiff and raised conduct concerns. Plaintiff disputed sole responsibility because specifications, review rounds and approvals involved multiple participants. Retained TO712 messages include clarification requests, versions, intermediate approvals and an instruction to prioritize TO751 before TO712 rework. Those records support Plaintiff's challenge to an account assigning the entire delay to him.

45. At 2:51 p.m. on May 12 Plaintiff emailed Mertens, copying Gregory Barker and Purnama, disputing the review and requesting that his disagreement be included in his personnel record. He referred to management's designed review cycles and described a repeated pattern of incompetence as a project-management practice. The University characterized this and other communications as misconduct. Plaintiff disputes that those conduct and performance explanations fully and accurately account for the challenged treatment.

46. Plaintiff objected to the disputed discipline and sought HR involvement in meetings. He alleges that the University included protected requests and unresolved disability-related work-location issues in its negative assessment. He distinguishes his requests for accommodation and family-care leave from broader disagreements about project management.

47. The June 18 final PIP report described an unsuccessful outcome, criticized workstation attendance from March 11 through June 18, and cited a March 24 through April 3 absence that Work Connections did not support. During that period, Plaintiff submitted the March 31 family-care certification and pursued family-care leave through Work Connections.

48. The June 18 report relieved Plaintiff of duties and provided for paid suspension after scheduled vacation pending disciplinary review. It initially

scheduled a DRC for July 7. The DRC occurred on July 20. On July 21, 2026 the University terminated Plaintiff by a letter signed by Mertens.

49. Mertens knew of Plaintiff's family-care circumstances and requests and participated in the PIP, its reviews and termination. Plaintiff alleges that the timesheet condition on his spring request, subsequent family-care requests, and continued escalation of discipline support an inference that protected family-care activity affected the result. He disputes that unprotected conduct and performance alone explain the termination.

50. Plaintiff alleges that the University escalated discipline after his own disability-related request, continued the challenged work-location requirement, and relied on resulting attendance and interaction disputes in its adverse evaluation. Johnson's report that his department wanted an independent medical evaluation during review of his disability-related request, described in paragraphs 18 and 19, supports an inference that department personnel knew of the request. Which department personnel requested the evaluation is within the University's knowledge.

51. The termination letter stated that Plaintiff remained eligible for rehire and described a work environment involving creativity, independent work and minimal reliance on regular collaboration. A personnel-action ticket opened July 21 at 2:48 p.m., referring to notification from Mertens, lists Expectations Not Met

and Rehire in Different Position with a restricted explanation. Plaintiff disputes the collaboration characterization in light of his faculty projects, working communications and favorable professional feedback.

52. The University continues to exclude Plaintiff from his former employment and maintains the challenged discipline and separation records. Its published rehire policy states that previous University employment records are reviewed and considered in reemployment decisions. Plaintiff seeks reinstatement and is willing to return with a reasonable accommodation. He alleges that the continuing use of records resulting from the violations obstructs that relief.

53. Plaintiff lost salary, employment benefits and employment opportunities following termination. The amounts and mitigation will be established through evidence. He seeks correction of records only to the extent necessary to remedy an established violation, not a free-standing declaration that every management criticism was incorrect.

**Count I: Section 504 failure to accommodate against the Regents**

54. Plaintiff incorporates the factual allegations in paragraphs 1 through 53 as relevant to this count.

55. Plaintiff was a qualified individual with a disability in a federally assisted University operation. The University knew or had reason to know of his

own disability and received his request for a reasonable adjustment of work location or schedule.

56. Plaintiff alleges that the University did not provide the requested arrangement or an effective reasonable alternative, although substantial duties were computer-based and a reasonable arrangement could address necessary on-site tasks. The challenged denial concerns the adjustment needed because of Plaintiff's own disability. Reliance on ordinary hybrid ineligibility did not resolve that separate request.

57. Plaintiff alleges that the denial excluded him from equal employment opportunity solely by reason of his disability, within the meaning of Section 504, and caused employment and economic injury to the extent established by the evidence. He seeks authorized employment relief and recoverable economic loss causally attributable to that denial. This count does not assert a separate Section 504 retaliation cause of action.

**Count II: FMLA family-care retaliation against the Regents**

58. Plaintiff incorporates the factual allegations in paragraphs 1 through 53 as relevant to this count.

59. Plaintiff engaged in protected family-care activity by communicating a need for leave, pursuing the Work Connections process, providing a family-care certification and requesting use of available FMLA time to care for his mother.

The requests themselves were protected activity, regardless of the precise amount ultimately used.

60. The University, through Mertens and the officials handling the requests, knew of that activity. Mertens participated in the adverse discipline and signed the termination letter.

61. Plaintiff alleges that the University used his family-care requests and attempted exercise of leave rights as a negative factor in the discipline culminating in termination, in violation of 29 U.S.C. § 2615(a)(1) and (a)(2) and 29 C.F.R. § 825.220(c). The factual basis includes Plaintiff's August 29, 2025 notice, his March 13 and March 31 requests, his May 18 request, his July 14 leave request, the July 20 disciplinary review and the July 21 termination, and management's knowledge. Plaintiff alleges that he would not have been terminated on the same terms absent that protected activity.

62. The alleged retaliation caused lost wages, benefits and other recoverable employment loss. Plaintiff seeks remedies authorized by 29 U.S.C. § 2617, including lost compensation, interest, statutory liquidated damages, reinstatement or front pay where reinstatement is inappropriate, and recoverable costs and attorney fees.

**Count III: ADA accommodation, prospective relief against Holcomb**

63. Plaintiff incorporates the factual allegations in paragraphs 1 through 53 as relevant to this count.

64. Plaintiff was qualified to perform the essential functions of his position with a reasonable accommodation. The University knew of his disability-related request and failed to provide an effective reasonable accommodation, contrary to 42 U.S.C. § 12112(b)(5)(A).

65. The continuing exclusion from his employment and maintenance and use of resulting adverse employment records are ongoing consequences that Plaintiff seeks to remedy through reinstatement, an effective accommodation and appropriate correction of records. Holcomb is named because of his current official responsibility for the HR functions needed to implement that relief.

66. Plaintiff requests prospective injunctive relief against Holcomb in his official capacity only. He does not seek retroactive monetary relief, personal liability or a declaration about past conduct detached from the requested employment relief under this count.

**Count IV: ADA retaliation, prospective relief against Holcomb**

67. Plaintiff incorporates the factual allegations in paragraphs 1 through 53 as relevant to this count.

68. Plaintiff's request for a disability-related adjustment was protected activity under 42 U.S.C. § 12203. Plaintiff alleges that the University received his written request concerning his own condition and subsequently subjected him to materially adverse discipline and termination. He relies on that submission and the related medical and employment process, rather than treating the March 5 caregiving discussion as conclusive proof of a disability-specific refusal.

69. Plaintiff alleges that, but for his protected disability-related request, the University would not have imposed the same adverse course of discipline and termination. He relies on the handling of the request, the continued ordinary hybrid exclusion, attendance-based criticism, the sequence following medical leave and the disputed explanations described above. Mertens participated in the PIP and its reviews and signed the termination letter. Work Connections received the written request, and Johnson attributed the inquiry about an independent medical evaluation to the department.

70. Plaintiff seeks prospective reinstatement and correction of resulting records to end the continuing exclusion and employment barriers. Relief is requested solely against Holcomb in his official capacity, through the HR authority described above, and includes no damages against him.

**Request for relief**

Plaintiff requests judgment on the counts proved and the following relief:

A. Against the Regents, lost wages, benefits, interest and other economic relief authorized under Section 504 and the family-care FMLA, without double recovery, and statutory liquidated damages under the FMLA.

B. Appropriate reinstatement and employment relief against the Regents under Section 504 and the FMLA; alternatively, front pay under the FMLA where reinstatement is inappropriate. Against Holcomb under the ADA, prospective injunctive relief directing reinstatement with a reasonable accommodation and correction of discipline, termination and rehire records attributable to the violations.

C. An injunction against continued use of unlawful disability-related hybrid exclusions and retaliatory records in Plaintiff's reinstatement and reemployment, tailored to the violations proved.

D. Taxable costs and attorney fees recoverable under the applicable statutes. Plaintiff does not seek fees for his own pro se time.

E. Other relief within the Court's authority consistent with these claims. Plaintiff does not request punitive damages or emotional-distress damages under Section 504 or the FMLA, or damages against Holcomb under the ADA.

**Jury demand**

Under Federal Rule of Civil Procedure 38, Plaintiff demands trial by jury on all issues for which a jury right exists. The prospective equitable remedies are requested from the Court.

Respectfully submitted,

Signature: ______________________________

Stanislav Dordik, Plaintiff, proceeding pro se
Mailing address: 2120 Arbor Circle West apt 201, Ypsilanti, MI 48197
Email: stasdordik@gmail.com
Telephone: 734-686-1307
Date signed: 11/9/2026

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Stanislav Dordik

**(b)** County of Residence of First Listed Plaintiff: Washtenaw
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Stanislav Dordik, proceeding pro se

## DEFENDANTS

The Regents of the University of Michigan;
Richard S. Holcomb, Jr., official capacity only

County of Residence of First Listed Defendant: ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [X] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
29 U.S.C. 794; 29 U.S.C. 2615; 42 U.S.C. 12112 and 12203

Brief description of cause:
Disability accommodation and retaliation; family-care leave retaliation

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Unspecified

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

☐ Yes
☐ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ Yes
☐ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

Notes :

Save Print Reset Exit

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Stanislav Dordik

**(b)** County of Residence of First Listed Plaintiff: Washtenaw
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Stanislav Dordik, proceeding pro se

## DEFENDANTS

The Regents of the University of Michigan;
Richard S. Holcomb, Jr., official capacity only

County of Residence of First Listed Defendant: 
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
29 U.S.C. 794; 29 U.S.C. 2615; 42 U.S.C. 12112 and 12203

Brief description of cause:
Disability accommodation and retaliation; family-care leave retaliation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** Unspecified

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ____________ DOCKET NUMBER ____________

DATE SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ________ AMOUNT ________ APPLYING IFP ________ JUDGE ________ MAG. JUDGE ________

PURSUANT TO LOCAL RULE 83.11

1. Is this a case that has been previously dismissed?

☐ Yes
☐ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

2. Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☐ Yes
☐ No

If yes, give the following information:

Court: ______________________________

Case No.: ______________________________

Judge: ______________________________

Notes :

Save Print Reset Exit